UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| AMOS ROSE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:19-CV-018-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| EMERGENCY MEDICAL TRAINING ) | **GRANTING MOTION TO DISMISS** |
| PROCESSIONALS, LLC, et al., ) | |
| ) | |
| Defendants. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Amos Rose sued his former school, Emergency Medical Training Professionals, LLC[1] ("EMTP"), and Gerria S. Berryman, individually and in her official capacity as program director, in Fayette Circuit Court following his termination from the program. [R. 1-2] Defendants filed a Notice of Removal to this Court [R. 1]. This matter is now before the Court on Defendants' Motion to Dismiss [R. 5]. Plaintiff filed a response [R. 7], and Defendants filed their reply [R. 8]. Fully briefed, this matter is ripe for decision. For the reasons stated herein, the Court will grant the Defendants' Motion to Dismiss.

**I.     Background**

Defendant EMTP operates a private, for-profit educational facility in Lexington, Kentucky that provides training for its students to be employed as paramedics. [R. 1-2 at p. 2] Plaintiff Rose enrolled in Defendants' program in October 2017. *Id.* at p. 3. On September 4, 2018, a field internship site accused Rose of falsifying patient run reports. *Id.* Rose states that he

---

[1] Plaintiff's complaint identifies this defendant as "Emergency Medical Training Processionals." [R. 1-2] The Court construes this as a spelling error and will refer to this defendant as "Emergency Medical Training Professionals" or "EMTP."

was also accused of "sending a threatening message concerning the unwarranted allegations." *Id.* Subsequently, EMTP terminated Rose from the training program. *Id.* Rose appealed his termination, but the appeals process affirmed his dismissal. *Id.*

On January 18, 2019, Rose sued Defendants EMTP and Berryman in Fayette Circuit Court alleging that he was "a victim of retaliation" and "denied procedural due process when he appealed the Defendant's decision to terminate" him from the training program. *Id.* at p. 4. Rose further alleged that the Defendants' acts were "arbitrary and capricious." *Id.* at p. 5. Rose's complaint states that he is entitled to "compensation, punitive damages, as well as damages for embarrassment and humiliation." *Id.* at p. 6. Defendants have moved to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). [R. 5]

## II.    Motion to Dismiss Standard

Dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) where the plaintiff "fails to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is factually plausible if the complaint contains factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a showing that the defendant is probably liable, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To meet this

plausibility standard, the complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679. In order to survive a Rule 12(b)(6) motion, the complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The "complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. Discussion

#### A. Count I: 42 U.S.C. § 1983

Count I of Rose's complaint alleges a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights. [R. 1-2] After his internship accused him of falsifying patient run reports, Plaintiff made a public post online which stated, in part, that he was "extremely butthurt mad" that EMTP degraded his achievements, and that he hoped a person associated with EMTP "contracts ebola [sic]." [R. 5-1 at p. 1] Plaintiff argues that this post was part of the reason for his termination from the program and that decision violated his First Amendment rights to free speech. [R. 1-2] Defendants argue that the claim should be dismissed, as the complaint fails to allege state action required under § 1983. [R. 5-1]

A private entity acting on its own cannot deprive a citizen of First Amendment rights. *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007). As such, EMTP—a private, for-profit educational facility—cannot violate Rose's First Amendment rights on its own. State

action must be present to trigger First and Fourteenth Amendment protections. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Here, Plaintiff fails to allege that either EMTP or Ms. Berryman was a state actor. In fact, Plaintiff's only mention of any connection between EMTP and the state is the bare allegation that "it is the belief of the Plaintiff that the Defendant is a recipient of federal funds." [R. 1-2 at p. 6] This threadbare assertion fails to sufficiently allege an essential element of a § 1983 claim—that Defendants were state actors—and offers the Court no basis for finding that the Defendants' actions can be "fairly attributable" to the state. *Iqbal*, 556 U.S. at 678; *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (stating that a § 1983 claim must identify "a person acting under color of state law").

When a private entity's actions so approximate state action that they may be "fairly attributed" to the state, a private entity can be held to constitutional standards. *Lansing*, 202 F. 3d at 828. The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). A plaintiff need only show state action under one of the tests in order to proceed with his claim. *Wilcher*, 498 F.3d at 519. The public function test requires that "the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. *Id.* The nexus test requires a sufficiently close relationship between the state and private actor so that the act may be attributed to the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff has failed to allege facts that would support a determination under any of the three tests that EMTP's conduct is "fairly attributable"

to the state.

The Sixth Circuit has consistently required more than "bare allegation[s]" that the actions of a private party "appear[] to be fairly attributed to state action." *Hardy v. Cmty. Mental Health*, No. 17-2181, 2018 WL 4846570, at *3 (6th Cir. Jul. 10, 2018) (citing *Twombly*, 550 U.S. at 555). In *Hardy*, for example, the Plaintiff alleged that his former employer—a non-profit corporation which received state and federal funding—violated his First Amendment rights by retaliating against him after he complained about certain staff. *Hardy*, 2018 WL 4846570, at *1. However, the Plaintiff "did not allege that state officials had any involvement in [his employer's] decision to terminate his employment." *Id.* The Sixth Circuit affirmed, stating that the "district court correctly concluded that [the plaintiff] failed to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

*Wilcher* is also particularly instructive in resolving the § 1983 claim against Defendants. In that case, the Plaintiff argued that a cable television operator should be considered a state actor because the operator and city worked "hand-in-glove" to enact new regulations. *Wilcher*, 498 F.3d at 520. The Sixth Circuit affirmed the district court's dismissal of Plaintiff's complaint under Rule 12(b)(6) because although some television "channels were subject to both federal and state regulation, . . . this alone did not convert [the cable operator's] private action into state action." *Id.* at 521 (internal citation omitted). As a result, the Plaintiff's complaint failed to allege sufficient facts to show that the actions of the cable television operator—a private party— constituted state action. *Id.* at 518.

Rose's complaint suffers from the same shortcomings described in these cases. First, Plaintiff's complaint fails to allege sufficient facts to survive dismissal under the public function test. Although Rose broadly argues that education is a public function [R. 7], the relevant

question is not simply whether a private entity is serving a "public function." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Rather, the question is whether the function has been "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). Plaintiff's complaint contains no content demonstrating—or even alleging—that the education and training of paramedics is traditionally the exclusive prerogative of the state. Though such services benefit the public, emergency medical services training is not akin to holding elections or exercising eminent domain. That a private entity performs a function which serves the public does not make its acts state action. *Rendell-Baker*, 457 U.S. at 842.

Plaintiff's complaint likewise fails to contain any allegations sufficient to survive dismissal under the state compulsion test. Rose makes a bare allegation that "it is the belief of the Plaintiff that the Defendant is a recipient of federal funds." [R. 1-2 at p. 6] The Court need not accept this threadbare recital as true for purposes of the Motion to Dismiss. *Iqbal*, 556 U.S. at 678. As Rose has alleged no facts indicating that the state encouraged or coerced EMTP to terminate Plaintiff from the program, Plaintiff's complaint fails to allege plausible state action under the state compulsion test. *Twombly*, 550 U.S. at 557.

Finally, Plaintiff's complaint fares no better under the nexus test. In his Response to the Motion to Dismiss—but notably, not in his complaint—Rose asserts that the "regulations of the Defendant's program by the state could amount to state action." [R. 7 at p. 5] Rose cites EMTP's state certification, license to operate, and the minimum standards required for compliance with the Kentucky Commission on Education. *Id.* However, Plaintiff fails to allege that EMTP's regulation or licensing by the state compelled or even influenced Rose's termination from EMTP, such that it is plausible that the state directed EMTP to act as it did.

In sum, Plaintiff has failed to allege facts sufficient to support a determination that

EMTP's conduct is "fairly attributable" to the state, dooming his § 1983 claim. *Hardy*, 2018 WL 4846570, at *3; *Wilcher*, 498 F.3d at 518. As a result, the Court will grant the Defendants' Motion to Dismiss Count I of Rose's complaint.

B. **Count II: Section 2 of the Kentucky Constitution**

Count II of Rose's complaint alleges that the decision to terminate him from Defendants' program was "arbitrary and capricious" in violation of "Article Two (2) of the Kentucky Constitution." [R. 1-2 at p. 9] Section 2 of the Kentucky Constitution states that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." K.Y. CONST. § 2 (1891). However, Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights. *Faul v. Bd. of Educ.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013) (citing *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536–37 (Ky. 2011)). Specifically, the Kentucky Supreme Court ruled that Kentucky's General Assembly has not authorized a statutory private right of action for state constitutional violations, and the Court refused to create a constitutional tort akin to a federal *Bivens* action for violations of Kentucky's Constitution. *Faul*, 2013 WL 1511746, at *3 (citing *St. Luke*, 354 S.W.3d at 536–37).

Plaintiff concedes that his only opportunity for relief under Count II will arise if the Court disregards the Kentucky Supreme Court's holding in *St. Luke* and finds that "the Kentucky Constitution can be a tool of redress" for plaintiffs. [R. 7 at p. 6] Plaintiff has failed to set forth any compelling reason to reject the Kentucky Supreme Court's holding, and this Court declines to do so.

Kentucky law does not recognize a cause of action to support Rose's claim based on Section 2 of the Kentucky Constitution. This claim fails as a matter of law, and the Court will

grant the Defendants' Motion to Dismiss Count II of Rose's complaint.

　　　C.　　Attorneys' Fees

Defendants argue that they are entitled to attorneys' fees under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927. [R. 5-1 at pp. 10–11; R. 8 at pp. 9–11]

Section 1988 provides that in § 1983 cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Sixth Circuit has observed that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly *egregious cases of misconduct*." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (emphasis added). Courts should not permit such awards "routinely or simply because [the defendant] succeeds." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (internal citation omitted).[2] A court may award attorney's fees to prevailing defendants under § 1988 only when the plaintiff's suit "was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.*

Although Plaintiff's § 1983 claim ultimately failed, it does not constitute the type of "egregious" misconduct that gives rise to an award of attorneys' fees under § 1988. It is true that Plaintiff reiterates arguments which a court rejected in previously litigated cases. *See Raithatha v. Univ. of Pikeville*, No. 7:16-CV-251-EBA, 2017 WL 4583245, at *8 (E.D. Ky. Oct. 13, 2017) (distinguishing cases finding educational programs to be state actors—cited by Plaintiff's counsel—from the facts at hand). However, the Court finds that Plaintiff's actions here do not warrant the "extreme" sanction of awarding attorneys' fees to Defendants.

---

[2] The standards set forth by the Supreme Court in *Christiansburg* regarding "prevailing party" status for purposes of a Title VII claim also govern attorney's fee awards brought under § 1988. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

Section 1927 states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney's ethical obligation of zealous advocacy on behalf of his or her client "does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits." *Cont'l Corp.*, 789 F.2d at 1230. Accordingly, "when an attorney knows or reasonably should know that a claim pursued is frivolous," the court may assess fees attributable to such actions against the attorney. *Id.*

Although the Court declined to entertain Plaintiff's invitation to reject the Kentucky Supreme Court's holding in *St. Luke Hospital v. Straub*, the Court finds that the "unreasonable and vexatious" standard for an award of attorneys' fees under § 1927 is not met. It is true that Kentucky law is clear that no cause of action exists for a violation of Article II of the Kentucky Constitution. *St. Luke*, 354 S.W.3d at 536–37. The most cursory legal research would have revealed that this claim would fail. However, considering the clarity of the law, no attorney could possibly have spent significant time preparing a defense to this claim. *See Cont'l Corp.*, 789 F.2d at 1231 (finding that, although the complaint was unartfully drawn, the clarity of the law precluded the application of a § 1927 fee award). Although the complaint certainly is a boilerplate effort, its deficiencies are so easily resolved that the Court cannot characterize Plaintiff's assertion of this claim as "vexatious" multiplication of the litigation.

### IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** as follows:

1. The Court will **GRANT** Defendants' Motion to Dismiss **[R. 5]** and **DISMISS**

**WITH PREJUDICE** Plaintiff's complaint **[R. 1-2]**.

2. The Court will **DENY** Defendants' requests for attorneys' fees under 42 U.S.C. § 1988(b) and 28 U.S.C. § 1927 **[R. 5-1; R. 8]**.

This the 30th day of September, 2019.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY